394 P.2d 269

**H. D. BUCHANAN, Plaintiff-Appellant,**

**v.**

**T. I. DOWNING and American Home Products, Inc., Defendants-Appellees.**

**No. 7400.**

Supreme Court of New Mexico.

July 20, 1964.

Menig & Sager, Albuquerque, for appellant.

Rodey, Dickason, Sloan, Akin & Robb, Robert D. Taichert, Albuquerque, for appellees.

CARMODY, Justice.

From the granting of a summary judgment in favor of the defendants, in a malpractice case involving the administering of a hypodermic injection of Sparine, plaintiff appeals.

Plaintiff had suffered from vomiting and diarrhea for about three days, when the defendant, Dr. Downing, was called to administer to him. Dr. Downing went to the plaintiff's home and injected Sparine into plaintiff's right deltoid muscle. There was an instant reaction from the shot and the injection site immediately reddened. Thereafter, plaintiff suffered an open, festering wound at the site of the injection and ultimately had to undergo a skin graft, because of the sloughing-off of the skin. Plaintiff then sued Dr. Downing and the manufacturer of the drug, after which extensive discovery procedures were followed, including the taking of depositions of the parties, the propounding and answering of interrogatories, and the filing in the cause of many affidavits.

Upon motions for summary judgment, submitted on behalf of both the defendants, the court granted summary judgment as to each of the defendants, after considering all of the pleadings, the depositions and the affidavits, the court determining that there was no genuine issue of any material fact.

Although the appeal was taken from the judgment in favor of each defendant, plaintiff, in this court, only objects to the summary judgment in favor of the doctor. Plaintiff, in his brief, concedes that, in view of the matters before the trial court, the res ipsa loquitur doctrine may not logically be applied to the manufacturer. Thus we will accept plaintiff's explanation of the fact that the judgment in favor of the manufacturer is not appealed, even though the record shows to the contrary.

Plaintiff strongly urges that the granting of summary judgment is error when an inference of negligence is raised through the proper application of res ipsa loquitur and that inference is not overcome. The defendant, on the contrary, contends that the plaintiff's condition was merely a poor medical result and that the doctrine has no application to the facts of this case.

Plaintiff alleged negligence and reliance upon the doctrine of res ipsa loquitur, claiming that thereby he is entitled to have a jury pass upon the alleged negligence of the defendant. However, other than his own testimony by deposition, vaguely claiming that the defendant doctor was at fault, the plaintiff offered no evidence, by deposition or affidavit, of any witness, expert or otherwise, supporting his allegation of negligence or the proximate cause of the injury.

We have discussed the doctrine of res ipsa loquitur in Hepp v. Quickel Auto & Supply Co., 1933, 37 N.M. 525, 25 P.2d

197, and in Renfro v. J. D. Coggins Co., 1963, 71 N.M. 310, 378 P.2d 130, in both of which cases we found the doctrine not to be applicable; but the doctrine was applied by us in Tafoya v. Las Cruces Coca-Cola Bottling Company, 1955, 59 N.M. 43, 278 P.2d 575. In Tafoya and in Renfro, the following statement appears:

"It is generally said that for the res ipsa loquitur doctrine to apply these elements must exist: (1) That the accident be of the kind which ordinarily does not occur in the absence of someone's negligence; (2) that it must be caused by an agency or instrumentality within exclusive control and management of the defendant. * * *"

There is no particular argument but that the second element above stated is present in this case. It is, however, with respect to the first element around which the entire controversy revolves.

■ Plaintiff asserts that, in the deposition of Dr. Riley, there is an implication which would satisfy the first element of the res ipsa loquitur doctrine. The statement made by the doctor was, "This is not a natural reaction to such an injection." The plaintiff reads into this answer that it amounts to a sufficient showing that the accident would not have occurred but for someone's negligence, and that therefore the doctrine requires the defendant to go forward with the burden of proof. In our opinion, such an implication from the testimony is not warranted, because even though the injury may not have been a natural reaction, it does not follow that an unnatural reaction was the result of negligence. Dr. Riley, in his deposition, went on to state that the reaction could have been due to a number of things, such as the nature of the medicine, the nature and allergies of the patient, or the manner in which the injection was given. It is the absence of any showing that, without the defendant's negligence, the unnatural reaction suffered by the plaintiff would not have occurred, which takes the case outside the res ipsa loquitur rule. The only possible evidence in the record which might be considered, in order to bring the case within the limits of the rule, is so vague, uncertain and conjectural that it can hardly be considered. The evidence referred to is that of the plaintiff when he testified that while he did not actually watch Dr. Downing give the injection, nevertheless that he felt that the needle was not injected deeply into his arm, or that it might have been merely inserted underneath the skin. Again referring to Dr. Riley's testimony, he was asked if such a subcutaneous injection had been given, whether it could have caused such a reaction as experienced by the plaintiff. The doctor answered, "That is *possible.*" (Emphasis added.)

■ Even if we were to assume, for the purposes of this appeal, that Dr. Downing was negligent in giving a subcutaneous injection, there was still a complete lack of any showing that such negligence was a proximate cause of the injury. Other than the plaintiff's bare allegation of negligence, the record is plain that the actual cause of the reaction could have been any one of a number of things. It is not sufficient to show that the negligence charged might fairly and reasonably have caused the injury, if the circumstances shown indicate an equal probability that it was due to some other cause. Renfro v. J. D. Coggins Co., supra. Proximate cause rests on probabilities. Sanders v. Atchison, Topeka & Santa Fe Railway Co., 1959, 65 N.M. 286, 336 P.2d 324. Even at best, the expert testimony indicated that negligence as the proximate cause of the injury was only a possibility, not a probability, and therefore there is no testimony, expert or otherwise, to show the proximate cause of the injury.

In Cervantes v. Forbis, 1964, 73 N.M. 445, 389 P.2d 210, we find the following statement:

"* * * The fact that a poor result is achieved or that an unintended incident transpired, unless exceptional circumstances are present, does not establish liability without a showing that the result or incident occurred because of the physician's failure to meet the standard either by his acts, neglect, or inattention. Such facts must generally be established by expert testimony. See note, 141 A.L.R. 5, 6; 81 A.L.R.2d 597; 54 A.L.R.2d 200. Likewise, expert testimony is generally required to establish causal connection. See note 13 A.L.R.2d 11, 31. Our holding in the recent case of Woods v. Brumlop, 71 N.M. 221, 377 P.2d 520, is in accord with this general rule."

We do not believe that there are the exceptional circumstances present in this case such as would justify deviation from the rule above stated. See, also, Bowles v. Bourdon, 1949, 148 Tex. 1, 219 S.W.2d 779, 13 A.L.R.2d 1; Toy v. Rickert, 1958, 53 N.J.Super. 27, 146 A.2d 510 and Renrick v. City of Newark, 1962, 74 N.J.Super. 200, 181 A.2d 25, as well as Grantham v. Goetz, 1960, 401 Pa. 349, 164 A.2d 225, Graham v. St. Luke's Hospital, 1964, 46 Ill.App.2d 147, 196 N.E.2d 355, and Cox v. Saskatoon (Sask.) [1942] 1 West Week 717, [1942], 2 DLR 412. See note, 82 A.L.R.2d 1262.

■ It is pointed out by the plaintiff that there is a serious conflict in the authorities with respect to the courts' attitude toward the res ipsa loquitur doctrine in malpractice cases. In this connection, it is urged that this court should follow some of the pronouncements principally emanating from the California courts. See Ybarra v.

Spangard, 1944, 25 Cal.2d 486, 154 P.2d 687, 162 A.L.R. 1258; Bauer v. Otis, 1955, 133 Cal.App.2d 439, 284 P.2d 133; Seneris v. Haas, 1955, 45 Cal.2d 811, 291 P.2d 915, 53 A.L.R.2d 124; but see Siverson v. Weber, 1962, 57 Cal.2d 834, 22 Cal.Rptr. 337, 372 P.2d 97, which is partially distinguished in Davis v. Memorial Hospital, 1962, 58 Cal.2d 815, 26 Cal.Rptr. 633, 376 P.2d 561. While fully appreciating the obstacles facing a plaintiff attempting to prove negligence on the part of an attending physician, we decline to follow certain statements found in some of the above California decisions, as being too sweeping and placing too great a burden on a defendant doctor. We do not desire to take sides in any controversy as to liberal or strict construction with respect to the doctrine. We do not doubt that there are cases involving malpractice in which the doctrine should be applied; but to allow a layman, be he judge or juror, to determine that merely because an injection does not ordinarily cause trouble, that therefore, if it does, negligence is implied, is not to us a proper means of determining such an issue. The mere fact that most of us are familiar with injections does not in any sense qualify us as experts in this branch of the medical science. Many things can go wrong, insofar as injections are concerned, and the explanation therefor must be left to those who are schooled and trained in that science. The California holding, which allows the application of the doctrine of res ipsa loquitur to cases of injections on the basis that ordinarily such injections do not cause trouble unless unskillfully done, or unless there is something wrong with the serum, is too restrictive and we decline to follow it. It is well known that some injections do cause trouble to certain individuals, even when skillfully done and when nothing is wrong with the serum. Rather, we think the more practical rule is that followed by the majority of the courts, which requires at least a minimum showing, in injection cases, by expert testimony, that some variance from the recognized standards of care proximately caused the injury. See Graham v. St. Luke's Hospital, supra; Toy v. Rickert, supra; Renrick v. City of Newark, supra; Grantham v. Goetz, supra; Cox v. Saskatoon, supra; and Bowles v. Bourdon, supra.

Although plaintiff strenuously maintains that the granting of summary judgment was error and that he should have been allowed to present his case to a jury, nevertheless it is obvious from what we have said heretofore that to allow the case to proceed would be to permit the fact-finders to base their judgment on speculation and conjecture both as to negligence and causation. Cervantes v. Forbis, supra.

We have carefully examined and considered all of the cases cited by plaintiff, in addition to our own independent research;

and are of the opinion that the action of the trial court was proper. The judgment will be affirmed. It is so ordered.

COMPTON, C. J., and MOISE, J., concur.