[Civ. No. 45186. First Dist., Div. Three. Nov. 30, 1981.]

MARION FAYE VAHEY, Plaintiff and Appellant, v.
SANDRA SACIA, Defendant and Respondent.

COUNSEL

Neil D. Eisenberg for Plaintiff and Appellant.

D. Ralph Cesari and Cesari, Werner & Moriarty for Defendant and Respondent.

OPINION

**FEINBERG, J.**—Appellant Marion Faye Vahey brought an action for personal injuries against respondent Sandra Sacia and others involved in a five-car collision. The matter was settled and dismissed as to the other defendants. A jury returned a general verdict, finding in favor of respondent. A motion for new trial was denied. The appeal is from the judgment.

A car driven by A stopped on the highway and was hit by a car driven by B. C ran into B. There was evidence from which it could be concluded that appellant's car (the fourth car), driven by her husband, hit C's car and then was hit by respondent Sacia's (the fifth car). It could be concluded from other evidence that Mr. Vahey stopped and then respondent ran into him and pushed him into C. Appellant suffered a severe hip injury, either in the collision with C or in the collision with respondent. There was evidence that she would not have suffered the particular injury if she had been wearing a seat belt.

There was no question but that A, B and/or C were negligent, and such negligence was either the cause or a contributing cause of appellant's injury. It also appears that there was no substantial question of, Mr. Vahey's negligence.

### 1. *Instruction on Burden of Proof*

Appellant requested the instruction set forth in the margin,[1] which quoted headnote 4 to *Cummings* v. *Kendall* (1940) 41 Cal.App.2d 549, 550 [107 P.2d 282]. When this instruction was refused, appellant requested the court to follow the advice contained in the Use Note to BAJI No. 3.77.

Appellant contends on appeal that the refusal of the instructions was prejudicial error. She relies on the cases cited above and in the Use Note, as well as *Summers* v. *Tice* (1948) 33 Cal.2d 80 [199 P.2d 1, 5 A.L.R.2d 91] and *Copley* v. *Putter* (1949) 93 Cal.App.2d 453 [207 P.2d 876].

*Summers,* the leading case, is summarized by 4 Witkin, Summary of California Law (8th ed. 1974) section 625, page 2907, as follows: "A significant doctrine, phrased in terms of burden of proof but having a clear substantive effect, was announced in *Summers v. Tice* (1948) 33 C.2d 80, 199 P.2d 1. Plaintiff and defendants T and S were hunting quail. With knowledge of plaintiff's location and with an unobstructed view, defendants both fired their shotguns in plaintiff's direction. The major injury for which damages were sought was caused by a pellet entering plaintiff's eye, which could have come only from one of the guns, and the lower court could not determine which defendant had fired it. *Held,* judgment against both defendants was proper. (1) Both defendants were negligent toward plaintiff. (2) Although only one defendant's act was the proximate cause of the major injury, defendants were in a better position than plaintiff to offer evidence on the issue of causation, and fairness required that the burden of proof be shifted to them. 'They brought about a situation where the negligence of one of them injured the plaintiff, hence it should rest with them each to absolve himself if he can. The injured party has been placed by defendants

---

[1] "Where the automobile in which a person was a passenger collided with another car and was then struck by a third, the driver of the latter whose negligence concurred with that of the second cannot escape liability on the claim that all of the injuries were inflicted at the first impact where he is unable to prove that no injuries resulted from his wrong."

in the unfair position of pointing to which defendant caused the harm. If one can escape the other may also and plaintiff is remediless.' (33 C.2d 86.)" In support of this ruling, *Summers* quotes Wigmore: "'When two or more persons by their acts are possibly the sole cause of a harm . . ., and the plaintiff has introduced evidence that the one of the two persons . . . is culpable, then the defendant has the burden of proving that the other person . . . was the sole cause of the harm. . . . The real reason for the rule that each joint tortfeasor is responsible for the whole damage is the practical unfairness of denying the injured person redress simply because he cannot prove how much damage each did, when it is certain that between them they did all; let them be the ones to apportion it among themselves. Since, then, the difficulty of proof is the reason, the rule should apply whenever the harm has plural causes, and not merely when they acted in conscious concert. . . .' (Wigmore, Select Cases on the Law of Torts, § 153.)" (33 Cal.2d at pp. 85-86.)

*Summers* does not cite the earlier *Cummings* decision. The facts were that A ran into B, and a split second later, C hit B, injuring B's passenger. The court held that the C defendants, "wrongdoers, carry the burden of showing that no injuries resulted from their wrong and their task is to unravel the casuistries. In arguing the impossibility of doing this they concede their failure." (41 Cal.App.2d at p. 559.)

*Copley,* which follows *Summers* and *Cummings,* is virtually identical to *Cummings* on its facts. It held that it was error to instruct that the burden was on B to show that C caused B's injuries and that C was liable only for such injuries as he was shown to have caused. The court gave tacit approval to an instruction that "'if you find that the accident complained of was proximately caused by concurrent negligence on the part of the defendants [A & C], . . . then . . . neither defendant can escape liability by claiming that all the injuries were inflicted by the impact with the car of the other defendant, unless such defendant proves by a preponderance of the evidence that no injuries resulted from his negligence.'" (93 Cal.App.2d at p. 457.)

In *Apodaca* v. *Haworth* (1962) 206 Cal.App.2d 209, 214 [209 Cal.Rptr. 461], A was nonnegligently stopped on the highway when struck by B who was instantly struck by C. Passengers in A were injured primarily by fire, and there was no evidence or a conflict in the evidence as to whether the fire was started by B or C. The court followed *Summers, Copley,* and *Cummings* in ruling that the jury was

correctly instructed that the burden was on B and C to show that their acts did not cause the injuries.

A more recent case applies the *Summers* principle and presents a factual situation schematically similar to the present case. (*Lareau* v. *Southern Pac. Transportation Co.* (1975) 44 Cal.App.3d 783 [118 Cal.Rptr. 837].) A's vehicle was struck by B and came to rest on a railroad track. A's passenger was seriously and perhaps mortally wounded. The local police failed to move the vehicle and passenger off the tracks. C, an approaching train, was warned and could have stopped but collided with the car. The passenger was killed. There was some question of C's negligence and a more substantial question of whether the negligence was the cause of A's passenger's death. The plaintiffs in the wrongful death action requested and were denied an instruction that "'[3] ... If you find that the defendants, or any of them, were negligent, such defendant, or defendants, have the burden of establishing by a preponderance of the evidence all of the facts necessary to prove ...: [¶] [1] That such negligence was not a proximate cause of the death of ... [A's passenger].'" (*Id.*, at p. 790, fn. 3.) The court held that it was error to reject the instruction (but nonprejudicial because of circumstances not relevant here). (*Id.*, at p. 792.)

In the present case, the court rejected the proposed instruction, at least in part, because of a belief that the law had been changed by *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393].

*Sindell* v. *Abbott Laboratories* (1980) 26 Cal.3d 588, 598 [163 Cal.Rptr. 132, 607 P.2d 924, 2 A.L.R.4th 1061], where the court framed "an extension of the *Summers* doctrine," is testimony to its post-*Li* validity. It is noted there that "The rule developed in *Summers* has been embodied in the Restatement of Torts." (*Id.*, at p. 599.) "Section 433B, subdivision (3) ... provides: 'Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm.'" (*Id.*, at p. 599, fn. 11.)

Respondent argues that appellant's proposed instructions were correctly rejected for five reasons: (a) the *Summers* principle applies only where there are two defendants and here there was only one, (b) *Summers* applies where there is an innocent plaintiff and here the plaintiff

may have caused her own injuries by failing to wear a seat belt, (c) the reason for the *Summers* rule is obviated by the doctrine of comparative negligence, (d) the reason for the rule does not apply to this case, in any event, because the plaintiff was in a better position than respondent to know who caused her injury, and (e) the instructions, as phrased by appellant, were argumentative and confusing. These arguments are discussed in turn.

(a)

*Summers* applies to multiple *tortfeasors*[2] not to multiple *defendants*, and it is immaterial in this case that the matter went to trial only as against respondent, for A, B, and/or C was also a tortfeasor.

(b)

If *Summers* applies only to an innocent plaintiff, nevertheless the jury should be instructed in accordance with it, in case they find that the plaintiff was innocent.

(c)

More important, there is no good reason why the law of comparative negligence should affect the reasoning that led to the rule of *Summers*. It is true that in *Summers*, presumably the plaintiff was not negligent. But, of course, when *Summers* was decided, contributory negligence was a complete defense. Thus, only an innocent plaintiff could utilize the *Summers* principle. But, with the advent of comparative negligence, if, for example, in the facts of *Summers*, the injured hunter had been one-third responsible for his injuries because of his negligence, the rationale of *Summers* should be equally applicable and require that each of his fellow hunters have the burden of proving that he was not negligent or that his negligence was not two-thirds, the proximate cause of the injury.

(d)

The question is not simply, or only, who is in a better position to prove whose act caused the injury. Instead, in this case, as in *Haft* v.

---

[2]Or perhaps, more precisely, where there are multiple causes, at least one tortious. (See *Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists* ·(1964) 227 Cal.App.2d 675, 705 [39 Cal.Rptr. 64].)

*Lone Palm Hotel* (1970) 3 Cal.3d 756, 771 [91 Cal.Rptr. 745, 478 P.2d 465], the question is whether the respondent by her negligence has "deprived the present plaintiffs of a means of definitively establishing the facts . . . ." If respondent had not run into appellant, then either appellant would not have been injured or, if injured, it would be clear that A, B, or C was the cause of the injury. In any event, *Summers* states that "*ordinarily*" the defendants will be in a better position to offer evidence of which act caused the injury. As *Sindell* says of *Summers*: "Neither the facts nor the language of the opinion indicate that the two defendants, simultaneously shooting in the same direction, were in a better position than the plaintiff to ascertain whose shot caused the injury. As the opinion acknowledges, it was impossible for the trial court to determine whether the shot which entered the plaintiff's eye came from the gun of one defendant or the other. Nevertheless, burden of proof was shifted to the defendants." (*Sindell* v. *Abbott Laboratories, supra*, 26 Cal.3d at p. 600.) (Some of the cases briefed above—e.g., *Apodaca*—provide examples of factual settings in which the defendant was no better able than the plaintiff to tell what caused the injury.)

## (e)

The instruction which appellant first requested (see fn. 1 above) was to a degree, as respondent argues, argumentative and confusing. (3) It has been held that "A trial court has no duty to modify or edit an instruction offered by either side in a civil case" and "[i]f the instruction is incomplete or erroneous the trial judge may . . . properly refuse it." (*Truman* v. *Thomas* (1980) 27 Cal.3d 285, 301 [165 Cal.Rptr. 308, 611 P.2d 902] (dis. opn. of Clark, J.) and cases cited.) But this rule is subject to the qualification that it may be reversible error to refuse an instruction which is substantially correct and is unlikely to have misled the jury. (See *id.*, at p. 294; *Davis* v. *Memorial Hospital* (1962) 58 Cal.2d 815, 819 [26 Cal.Rptr. 633, 376 P.2d 561]; *Tobler* v. *Chapman* (1973) 31 Cal.App.3d 568, 586 [107 Cal.Rptr. 614].) Further, the court did not reject the instruction because it was argumentative and confusing. (See *ibid.*) If it had done so, appellant might have eliminated those defects. The court rejected the instruction because it did not believe that the burden of proof could shift from plaintiff to defendant. Finally, and what is perhaps most significant, it appears that appellant requested BAJI No. 3.80, which is the standard *Summers* instruction and which, with only slight modification, would have been appropriate.[3]

---

[3]The Use Note for BAJI No. 3.80 says, "Do not use this instruction in the ordinary multi-party traffic accident case," citing *Thornton* v. *Luce* (1962) 209 Cal.App.2d 542

There is no record of this instruction being refused, but the reporter's transcript includes the reading of the instructions, and No. 3.80 does not appear.

It is possible that the jury's verdict was based on a failure on appellant's part to prove respondent's negligence. It is also possible that the jury found respondent to be negligent but returned a verdict in favor of respondent because of the failure of appellant to prove that such negligence was the cause of her injury. A rational view of the evidence is that appellant was injured by the negligence of A, B, and/or C and/or the negligence of respondent. ▆ Under the circumstances, it was difficult for appellant to "pin the injury on one of the defendants only" (*Summers v. Tice, supra*, 33 Cal.2d at p. 86), and the jury should have been instructed in accordance with that case. There is a reasonable probability that, had the jury been instructed that the burden of proof as to the cause of the injury was on respondent, it would have found in favor of appellant. The judgment therefore must be reversed.

## 2. *Misconduct of Counsel*

We have reviewed the contentions of misconduct of counsel and find them to be without merit.

## 3. *Instruction as to Deduction of Settlement with Joint Tortfeasor*

Appellant also contends that she should have been allowed to introduce evidence of the settlement and the jury should have been instructed in accordance with BAJI No. 14.63—or, if no such evidence were admitted, the jury should have been instructed according to BAJI No. 14.64.

It would seem that the appropriate procedure would have been to accept an admission of the amount of settlement and then to give the latter instruction. (*Albrecht v. Broughton* (1970) 6 Cal.App.3d 173 [85 Cal.Rptr. 659]; *Shepherd v. Walley* (1972) 28 Cal.App.3d 1079 [105 Cal.Rptr. 387].)

[26 Cal.Rptr. 393]. We question the validity of this advice. *Thornton* was not an *ordinary* multiparty case, and the identity of the persons whose conduct immediately inflicted the injuries was known. (*Id.*, at p. 555.) *Thornton* is said by *Lareau, supra*, 44 Cal.App.3d at page 792, footnote 6, to hold that "it was error but not prejudicial to give an instruction shifting the burden of proof without specifying the particular set of plaintiffs and defendants to whom it applied."

■ The error in refusing to instruct was harmless, however, because it went only to damages, and, as noted above, the jury found respondent not to be negligent or her negligence not to be the cause of the injury. Thus it never reached the issue of damages.

The judgment is reversed.

White, P. J., and Barry-Deal, J., concurred.

A petition for a rehearing was denied December 18, 1981.