Henry C. TURNER, Appellant,

v.

Glenn REYNOLDS and the Pattie A. Clay Infirmary Association at Richmond, Kentucky, Appellees.

Court of Appeals of Kentucky.

Aug. 12, 1977.

Rehearing Denied Sept. 23, 1977.

Discretionary Review Denied Jan. 24, 1978.

Julius E. Rather, Lexington, for appellant.

W. R. Patterson, Jr., Landrum, Patterson & Dickey, Lexington, for Glenn Reynolds.

R. David Clark, Walter A. Ward, Boehl, Stopher, Graves & Deindoerfer, Lexington, for Pattie A. Clay Infirmary.

Before HAYES, HOWARD and WILHOIT, JJ.

HAYES, Judge.

By order of the Supreme Court dated January 31, 1977, this case was transferred to this court. The appeal arises out of a summary judgment entered in the Madison Circuit Court, which denied appellant's claim for alleged medical malpractice damages. Appellant, Henry Turner, contends that the trial court erred in ruling that expert evidence was necessary to substantiate his claim.

On November 22, 1970, appellant was assaulted with a knife. As a result of this altercation, appellant sustained cuts on his head. The police took appellant to Pattie A. Clay Infirmary where he was treated by appellee, Glenn Reynolds. Dr. Reynolds examined appellant and found three lacerations which he cleansed and sutured. Although appellant testified that he informed Dr. Reynolds that he had been stabbed, no x-rays were taken of appellant's head, and he was released after a thirty minute observation period.

Approximately one year later, appellant was struck by a truck. It was necessary that x-rays be taken of appellant's head and the examination of these x-rays revealed that there were pieces of a knife blade lodged in appellant's head. Appellant states that he was not aware of the results of these x-rays, although there is evidence to the contrary.

Nevertheless, appellant began to suffer headaches in September, 1973. He went to Dr. Clouse in December of that year. X-rays of appellant's head were again taken. These x-rays also showed the presence of pieces of a knife blade. To prevent further complications, these pieces were surgically removed from appellant's head. This suit was filed in May, 1974, alleging negligence in failing to discover and treat this problem. In his answers to interrogatories, appellant stated that he intended to present no medical expert. The trial judge, therefore, granted motions for summary judgment on the grounds that such evidence would be necessary to sustain appellant's burden of proof.

Appellant presents two arguments in support of his position that no expert testimony was required:

(1) The doctrine of res ipsa loquitur is applicable.

(2) No expert evidence is necessary since this case comes within the exception to the rule requiring such evidence, *Harmon v. Rust,* Ky., 420 S.W.2d 563 (1967).

■ In order for the doctrine of res ipsa loquitur to apply in a medical malpractice action, the injury must be such as would not occur in the absence of negligence, *Jewish Hospital Association of Louisville, Ky. v. Lewis,* Ky., 442 S.W.2d 299 (1969). In addition, the Court of Appeals in *Meiman v. Rehabilitation Center,* Ky., 444 S.W.2d 78 (1969), has stated: ". . . the doctrine of res ipsa loquitur, although not usually applicable in malpractice cases, may be invoked in circumstances in which the generally accepted procedures are not calculated to produce the abnormal results asserted by the plaintiff."

A thorough examination of these cases reveals that the fact situation before this court is not one to which this doctrine can be applied.

In the case of *Harmon v. Rust, supra,* the Court of Appeals set forth the guidelines for determining the necessity of expert testimony in the medical malpractice action. Those guidelines are as follows:

The rule in malpractice cases is that negligence must be established by medical or expert testimony unless the negligence and injurious results are so apparent that laymen with a general knowledge would have no difficulty recognizing it. *Johnson v. Vaughn,* Ky., 370 S.W.2d 591.

■ Appellant argues that if Dr. Reynolds was informed that appellant had been stabbed then his failure to take x-rays was negligence that was so apparent as to be within the exception to the rule requiring expert medical evidence.

This court, however, does not agree. Even assuming the facts to be as appellant testified, it was still incumbent upon the appellant that he produce expert evidence that the standard of care required the taking of x-rays. In examining this issue, the Supreme Court of Arkansas stated in *Walls v. Boyett,* 216 Ark. 541, 226 S.W.2d 552 (1950), the following: "Such questions as whether the plaster cast should have been placed on the fractured arm, x-rays made, or an operation performed were obviously issues requiring scientific knowledge to determine." This decision was reaffirmed in *Davis v. Kemp,* 252 Ark. 925, 481 S.W.2d 712 (1972). Although there are no cases in Kentucky on this point, this Court finds the Arkansas decision to be dispositive of the issue presented herein.

Appellee, Dr. Reynolds, testified that he did all that should have been done in treating appellant and that there was no reason for x-rays to have been taken. After this evidence had been presented which supported appellee's motion for summary judgment, appellant was required to produce some expert evidence which would support his claim of negligence, *Neal v. Welker,* Ky., 426 S.W.2d 476 (1968). Having failed

to do so, the trial court was correct in entering the summary judgments.

Judgment is affirmed.

ALL CONCUR.